José R. Ramos Mimoso, etc., Plaintiff and Appellant, *v.* The People of Puerto Rico, etc., Defendants and Appellees.

No. 9876. Argued May 26, 1949.—Decided November 30, 1949.

*H. Ramos Mimoso* for appellant. *Vicente Géigel Polanco, Attorney General, A. Torres Braschi* and *Carlos J. Faure, Assistant Attorneys General,* for appellees.

MR. CHIEF JUSTICE DE JESÚS delivered the opinion of the Court.

Relying on the authorization to bring suits against The People of Puerto Rico granted by Act No. 76 of April 13, 1916 (Sess. Laws, p. 151),[1] the plaintiff filed this action to recover a parcel of land of .166 acre (*cuerda*) described in the complaint. It is alleged that said parcel of land is included within a rural property composed of 1.66 acre also described in the complaint and acquired by the plaintiff by purchase from Frank P. Hastings, by deed of January 27, 1945; that on the said parcel of land the Department of the Interior of Puerto Rico, sometime around the year 1919, with the consent of a previous owner of the property, built a road-

---

[1] Section 1 of Act No. 76 of April 13, 1916, as amended by Act No. 11 of April 18, 1928, provides:

"The district courts of Porto Rico shall hereafter be authorized to entertain suits against The People of Porto Rico, in the following cases:

"(*a*) Actions for damages.

"(*b*) Actions to recover real or personal property or an interest therein, with or without compensation for damages caused by retention of such property or for damages caused to said property, or on account of income or profits therefrom and for the survey of rural property; *Provided,* That no recovery shall be had on account of said damages and the aforesaid income or profits if occasioned by The People of Porto Rico prior to the date on which action is brought."

Section 9 of said Act No. 76 of 1916 provides:

"All actions against The People of Porto Rico shall be prescribed, if suit is not begun within one year after the cause of action arises, except that actions referring to real property shall prescribe in two years. Any person having any claim against The People of Porto Rico for any cause of action arising prior to the taking effect of this Act shall within one year after said date present a petition to the Legislative Assembly of Porto Rico requesting authorization to bring suit for said claim in the manner herein provided for in this Act, stating the maximum amount of his claim, the date when the cause of action is alleged to have arisen, and any other facts which either house of the Legislative Assembly may request."

man house and fenced the parcel; that when the plaintiff acquired the property of 1.66 acre he demanded the Department of the Interior to deliver to him the parcel of land which the Department had been occupying and the latter refused to deliver it alleging that it belonged to The People of Puerto Rico by exchange with don José Cestero Molina, former owner of the property.

The defendant denied that the plaintiffs were the owners of the parcel of land in question; he alleged that he was in possession thereof by exchange as already set forth and he pleaded the special defenses of the prescription of the action; acquisitive prescription in the event that his contention to the effect that he had acquired it by exchange should not prosper, and finally, that the action had not been instituted within the two-year term fixed by § 9 of Act No. 76 of 1916.

■ As grounds for the judgment dismissing the complaint, the court *a quo* stated:

".      .      .      .      .      .      .      .      .      .

"It appears from the evidence and the Court deems that it was proved to its satisfaction, that the parcel of land involved in this suit has been in the possession of the defendant, as owner, publicly and notoriously, at least, since 1919. When the plaintiffs purchased a larger parcel of land they knew that the defendant owned and alleged to be the owner of the parcel in question.

"Plaintiffs themselves admit in their testimony that The People of Puerto Rico has built on said parcel of land a roadman house since the year 1919 and that in 1946, date of the filing of this complaint, The People, undoubtedly, owned it, exercising acts of ownership on the land to which this action refers, for a period of approximately 27 years.

"Pursuant to § 9 of Act No. 76 of 1916, this action should have begun many years prior to the date in which this complaint was filed.

"The court does not believe that the construction of the house or the possession of the parcel of land by The People of Puerto Rico were acts of mere tolerance.

"Dr. José R. Ramos Mimoso testified that when he purchased the larger property from Mr. Hastings, the latter informed him that he either purchased the house and the land of The People of Puerto Rico or there would be no business. It is gathered from this situation that Dr. José R. Ramos Mimoso bought the larger property without ever purchasing the parcel of land the Government was owning.

"All the evidence admitted has convinced this court that the action brought by plaintiffs has prescribed. The People has exercised public and peaceful acts of ownership over the tract involved in this suit, since at least 1919 and on this tract it built a reinforced concrete house as dwelling for a roadman."

We shall now examine the evidence in order to decide whether it supports the findings of the lower court. It appears from the uncontradicted testimony of Rafael Cestero García, that his father, José Cestero Molina, was the owner of a piece of land of approximately 400 acres, of which the parcel in question was a part; that the witness managed his father's property and he learned that the Department of the Interior wanted his father to exchange a small parcel of land alongside road No. 2 for another parcel of land of The People of Puerto Rico of the same area; that his father did not wish to carry out the transaction, but Enrique Umpierre, at that time an officer of the Department of the Interior and a brother-in-law of the witness's father, took steps in order that he be permitted to build a roadman house on his property, and the witness's father felt compelled to oblige him; that the witness personally went with Umpierre and pointed out the place on the land where he could build the house; that the exchange never took place nor did his father receive any parcel of land from The People of Puerto Rico in exchange for the one on which the house was built; that his father, who had died a long time prior to the trial, never revoked his consent, inasmuch as he did not need said parcel of land to operate his property.

The evidence does not show, as the court found, that when the plaintiff purchased the parcel of land of 1.66 acre, he was

aware that the defendant alleged to be the owner of the parcel of .166 acre. Neither does it appear from plaintiff's testimony, as the lower court erroneously concluded, that the parcel of .166 acre was not included in the purchase made by the plaintiff from Hastings.[2] And as to Hastings' refusal to take steps to obtain from the Department of the Interior the transfer of the house, it does not have the scope which the court *a quo* gave it. What that conduct showed is that Hastings preferred not to sell the parcel of land if the sale was subject to the taking of such steps. That was the reason why the plaintiff was compelled to take such steps with the Commissioner of the Interior, who, as stated in the complaint, refused to remove the house alleging that The People of Puerto Rico owned the parcel in question.

The evidence for the defendant in no way showed that the contract of exchange had been agreed to. He only presented evidence consisting in letters from officers of the Department of the Interior, suggesting to José Cestero Molina the exchange referred to and inviting him to go to the Department of the Interior to close the deal. But those letters were never answered by Cestero Molina, as evidenced by the letter of April 14, 1919, defendant's Exhibit 9.[3] Besides, there

---

[2] Plaintiff's testimony on this point is as follows:

"Q. And in the price you paid to Mr. Hastings, was the fenced parcel included? [he is referring to the parcel of 0.166 acre]. A. I bought the whole tract from him. Q. Did you specifically pay him for the fenced parcels of land? A. Yes, sir. Q. Do you remember at what rate did you pay him? A. The price was $9,000 for the entire property. Q. As a lump sum? A. Yes, sir." (P. 18, T. of E.)

"Q. When you purchased and saw that said house was standing on the property, did you not ask Hastings to remove the house and clear your property of said house? A. At that time I could not afford to stop any transaction because I had to erect a garage thereon, and I needed part of Hastings' land. Q. Did you not ask him for it then? A. I asked him and he told me to undo the deal and it did not suit me to undo the deal at that time. Q. Was it because of Hastings' attitude that you had to bring this suit? A. Yes, sir." (P. 27, T. of E.)

[3] Defendant's Exhibit 9 is the following:

"April 14, 1919. Sir: We are addressing you for the third time in regard to the matter of the exchange of the parcel of land which The

was absolutely no proof to the effect that any land whatever was delivered by The People of Puerto Rico to Cestero in exchange, nor that any deed was ever executed to perform the contract, the entire property of 1.66 acres being recorded in the Registry of Property in plaintiff's name. Nor was there evidence that Hastings had at any time revoked the permit previously granted by Cestero.[4]

Based on the evidence which the lower court had before it, we can not conceive its conclusion that the defendant acquired the parcel of land in question through an exchange.

■ The plea of ordinary acquisitive prescription invoked by the defendant is not supported by the evidence either. We have seen that the exchange did not take place. Therefore, assuming for the sake of argument that defendant's possession were as owner, the indispensable requisite of just title would be lacking. Section 1857 of the Civil Code.

■■ Since this is an action against The People of Puerto Rico to recover real property, we need not discuss whether the action had prescribed pursuant to § 1863 of the Civil Code. This is so, because pursuant to § 9 of Act No. 76 of 1916, The People of Puerto Rico, in giving its consent to be sued,

People of Puerto Rico owns in Pueblo Viejo Ward for one of your own in the same ward.

"In our first letter No. 12-07/537, dated February 24, 1919, we pointed out the place on your land from which we would accept a tract with the same area as the parcel of The People of Puerto Rico, which is located in the crossing of the Guaynabo and Bayamón roads. Upon not receiving your answer, subsequently (on March 31) we reminded you of our previous letter but you have not answered that either.

"As we desire to settle this matter we notify you that if by next Monday, the 21st of the instant month, we have not heard from you on this matter, you will be ordered to remove the fences you have erected and the demarcation of the parcel of land of The People of Puerto Rico. Very truly yours, (there are two initials) Commissioner. Mr. José Cestero, Bayamón."

[4] On the day of the trial, according to plaintiff's evidence, Hastings had suffered a cerebral hemorrhage which prevented him from going to court and plaintiff requested that the case be left open to take his testimony, but it does not appear from the record that this witness testified in any form whatever.

imposed the condition that actions like the one in the case at bar, should be instituted within two years after the cause of action arises. We must therefore determine whether the action was instituted within the term fixed by the aforesaid Act.

This defense does not lie because, as we have seen, the evidence shows that the defendant possessed, not as owner, but with the license of the former owner José Cestero Molina and by mere tolerance on his part, which license and tolerance persisted when plaintiff's immediate predecessor, Frank P. Hastings, acquired the parcel of land, from which he segregated the tract of 1.66 acres which he sold to plaintiff. According to the evidence, prescription began to run when the plaintiff required The People of Puerto Rico in 1945 to deliver to it the parcel of .166 acre, and the delivery was refused. For the first time The People of Puerto Rico then alleged that it owned the land in question. It was from the instant that the defendant manifested for the first time that he possessed as owner, that the cause of action to recover arose, and it is from that moment that the two-year period fixed by Act No. 76 of 1916 began to run. The complaint having been filed on May 3, 1936, it is evident that the two years fixed by § 9 to bring suit had not elapsed.

■ Since there is no controversy as to the fact that the house belongs to The People of Puerto Rico and that it was built in good faith by virtue of the license granted, the defendant is entitled, as a prerequisite to the delivery of the parcel of land, to the payment of the cost of the materials used in the construction of the house, as well as labor cost. *Rivera* v. *Santiago*, 56 P.R.R. 361, and *García* v. *Stella*, 69 P.R.R. 911.

Consequently, the judgment appealed from will be reversed and the case remanded to the lower court so that it admit evidence exclusively on the cost of the materials used

. in the construction of the house as well as the labor cost, whereupon it shall enter judgment consistent with the principles set forth in this opinion.

Mr. Justice Negrón Fernández did not participate herein.

